UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVIS ELECTRONICS CO, INC., et. al

    PLAINTIFFS

v.                                                CIVIL ACTION NO. 3:20-CV-00038-CRS-CHL

SPRINGER CAPITAL, LLC, et. al

    DEFENDANTS

### MEMORANDUM OPINION

This matter is before the Court on the motion of Defendant Springer Capital, LLC for summary judgment pursuant to Federal Rule Civil Procedure ("FRCP") 56. DN 53. Plaintiffs Davis Electronics, LLC, et. al ("Davis") filed a response, and Defendant replied. DN 60; DN 64. This matter is now ripe for adjudication. For the reasons stated below, Springer's motion will be denied.

    I.    *Background and Posture of the Case*

In 1985, Gar Davis ("Davis") acquired the property ("the Davis property") located at 2211 Brownsboro Road in Louisville, Kentucky and constructed a building on the property ("the Davis building") shortly thereafter. Davis Dep., DN 60-1 at PageID# 818. Since that time, Davis has owned and occupied the property, operating an electronics business ("Davis Electronics, LLC") out of the Davis building. *Id.*

1

An apartment complex ("The Views") has existed on Biljana Drive uphill from the Davis property since before the Davis building was constructed. *Id.* at PageID# 819. In November of 2019, Davis filed a complaint in Jefferson Circuit Court, maintaining that water drainage from The Views was causing damage to the Davis property and to the Davis building. St. Ct. Compl., DN 1-3 at PageID# 24-25. In the complaint, Davis insists that drainage was not an issue prior to renovations conducted at The Views between 2016 and 2019. *Id.* Davis claims that because of these renovations, water drainage that was previously directed away from the Davis property is now directed toward it, causing runoff water from The Views to enter the Davis property. *Id.* at PageID# 25.

Davis named Springer Capital, LLC ("Springer") and SC Echo Associates, LLC ("SC Echo Associates") as Defendants. *Id.* at PageID# 22. After the original complaint was filed in state court, Springer and SC Echo Associates timely removed the case to federal court pursuant to 28 USC § 1332. Notice of Removal, DN 1. Davis later filed an amended complaint, adding Thomas Greenwood ("Greenwood") and Brookside Properties ("Brookside") as Defendants and adding Gar and Teresa Davis as Plaintiffs. First Am. Compl., DN 47 at PageID# 527. "Defendants" will be used to refer collectively to Springer, SC Echo Associates, Greenwood, and Brookside. "Plaintiffs" or "Davis" will be used to refer to Davis Electronics, Gar Davis, and Teresa Davis. Springer now moves for summary judgment pursuant to FRCP 56. DN 53.

II. *Relationship and Roles of Defendants*

To understand the nature of Plaintiffs' claim and the basis for Springer's motion for summary judgment, it is important to appreciate the rather complicated relationship of the defendant parties. Based on all evidence and documents presently in the record, the following facts seem to be uncontested:

2

Springer is a limited liability company ("LLC") owned by Greenwood and Thomas Farnoly ("Farnoly") in equal membership shares.[1] Farnoly and Greenwood also own another LLC, "SC Echo Managers," in equal membership shares.[2] Springer does not have an ownership interest in The Views.[3] When Springer identifies a property of interest, the property is acquired by a third LLC, created to hold title to the property.[4] The third LLC that owns The Views is "SC Echo Associates."[5] SC Echo Associates is comprised of a number of members, including Farnoly and Greenwood.[6] The managing member of SC Echo Associates is SC Echo Managers.[7]

The Views was acquired by SC Associates in 2015.[8] SC Echo Associates contracted with Brookside to manage The Views property.[9] The contract between the two parties defined SC Echo Associates as the "owner" of The Views and Brookside as an "independent contractor" and an "agent" of SC Echo Associates.[10] There is not and has never been contractual relationship between Springer and Brookside.[11] As part of the agreement between Brookside and SC Echo Associates, Brookside was tasked with managing renovations of The Views property.[12] The renovation work

---

[1] Pls.' Resp. Mem., DN 60 at PageID# 793; Farnoly Dep., DN 60-2 at PageID# 847.
[2] Pls.' Resp. Mem., DN 60 at PageID# 793; Farnoly Aff., DN 64-1 at PageID# 986.
[3] *See* Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 708-09 ("It is undisputed the property in question is solely owned by Defendant SC Echo . . . [and] . . . that Springer has no ownership interest in SC Echo."); Pls.' Resp. Mem., DN 60 at PageID# 794 (acknowledging that Springer has no ownership interest in The Views).
[4] *See* Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 717, 719-20 (responses to Interrog. Nos. 5, 8); Pls.' Resp. Mem., DN 60 at PageID# 793 ("Once Springer Capital identifies a property to acquire, it creates a single-purpose holding company to hold legal title to the property."); Farnoly Dep., DN 60-2 at PageID# 846 ("the property is ultimately owned by an entity that just owns that particular real estate").
[5] Pls.' Resp. Mem., DN 60 at PageID# 793; Farnoly Dep., DN 60-2 at PageID# 846.
[6] Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 719-20 (response to Interrog. No. 12).
[7] Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 719-20 (response to Interrog. No. 8); Pls.' Resp. Mem., DN 60 at PageID# 793; Farnoly Dep., DN 60-2 at PageID# 848.
[8] First Am. Compl., DN 47 at PageID# 530; Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 720.
[9] *See* First Am. Compl., DN 47 at PageID# 530; Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 709, 750.
[10] First Am. Compl., DN 47 at 530; Springer Mot. Summ. J. Mem., DN 53-1 at 748.
[11] Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 709.
[12] First Am. Compl., DN 47 at PageID# 530; Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 735 (response to Interrog. No. 10); Farnoly Dep., DN 60-2 at PageID# 855.

managed by Brookside is the work that Plaintiffs claim caused runoff water from The Views to be diverted toward the Davis property and resulted in injury to the property.[13]

### III. Motion for Summary Judgment

The underlying issue being contested in Springer's motion for summary judgment is whether Springer can be held liable for the renovation work and, hence, for the damages claimed by Plaintiffs. *See* Pls.' Resp. Mem., DN 60 at PageID# 792-95. Springer filed the motion on the basis that Plaintiffs have failed to provide any evidence that would "create a genuine dispute of material fact for the jury" as to whether Springer can be held liable for the damage to the Davis property. *See* Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 711. Springer first asserts that, "as the sole owner of the Views property," SC Echo Associates "is the only party that could potentially be liable to Plaintiffs." Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 709. Second, Springer contends that Plaintiffs have not shown or even alleged that "Springer was the landowner of the Views property, an agent, or has vicarious liability." Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 708, 710-11.

### IV. Plaintiffs' Response

Although the legal theory by which Plaintiffs seek recovery against Defendants is not entirely clear from either the original or amended complaint, Plaintiffs state in their response to Springer's motion that the claim against Springer is based on negligent trespass under Kentucky common law. Pls.' Resp. Mem., DN 60 at PageID# 796. As Plaintiffs acknowledge, the first of the three elements that must be established to maintain this claim is that the defendant breached a duty of care. *Id.* (citing *Rockwell Intern. Corp. v. Wilhite*, 143 S.W.3d 604, 620 (Ky. App. 2003)).

---

[13] First Am. Compl., DN 47 at 531-32.

4

Plaintiffs maintain that Springer owed Plaintiffs a duty of care. Although Plaintiffs cite to *Grayson Fraternal Order of Eagles v. Claywell,* 736 S.W.2d 328 (Ky. 1987) to support the contention that Springer's duty of care arose from the foreseeability of the injury, the crux of Plaintiffs' argument really lies in whether Springer directed or controlled the construction work that Plaintiffs allege caused the injury. Plaintiffs point to two sources as proof that Springer's involvement in the construction work was so significant that it amounted to "directing" the work. First, Plaintiffs rely in part on certain statements made by Farnoly during his deposition. Pls.' Resp. Mem., DN 60 at PageID# 794. Second, Plaintiffs rely on specific emails sent by Greenwood in late 2019. Pls.' Resp. Mem., DN 60 at PageID# 795; Farnoly Dep. Ex. C, DN 60-3 at PageID# 864; Farnoly Dep. Ex. D, DN 60-4 at PageID# 873. The content of each of these sources will be discussed below.

A. *Deposition of Thomas Farnoly*

In his deposition, Farnoly indicated that he was on the "acquisition side and the operations of the property" acquired by Springer. Farnoly Dep., DN 60-2 at PageID# 845. When asked to expand on what he meant by "acquisitions," Farnoly explained that he "look[s] at acquiring properties." *Id.* at PageID# 846. When asked to expand on "operations of the property," Farnoly's response was, "[l]easing, overseeing property management—managers on the site, our property management teams, Brookside Properties." Farnoly Dep., DN 60-2 at PageID# 846.

Farnoly later submitted an affidavit in which he attempted to clarify this latter response. Farnoly Aff., DN 64-1 at PageID# 987. In the affidavit, Farnoly stated that, in his deposition, he represented himself as an individual, not on behalf of an entity, and that he misspoke when he implied that Springer carried out "operations" of properties. *Id.* Farnoly explained that SC Echo Associates carried out such operations and, as a member of SC Echo Associates and as a 50%

5

owner in SC Echo Managers, he was involved in "leasing, overseeing property management, overseeing managers on site such as Brookside, and general oversight of operations." *Id.* Farnoly clearly stated in this affidavit that these responsibilities were not part of his role as an owner or member of Springer. *Id.*

B. *Thomas Greenwood Emails*

Emails sent from Greenwood's Springer email account have been offered by Plaintiffs into evidence as Exhibits C and D to the Farnoly Deposition. DN 60-3 and 60-4.

1. *Exhibit C*

The first exhibit provided by Plaintiffs (Exhibit C) is a series of emails that includes multiple email exchanges between Greenwood and Maria Simpson of Brookside from October of 2019, as well as a forwarded email message from Eric Ward of "Mr. Roof," a construction contractor. Farnoly Dep. Ex. C, DN 60-3 at PageID# 865-70. In these emails, Simpson and Greenwood discuss construction bids for work to be performed at The Views, including a bid from Mr. Roof and another bid from contractor identified by the parties as "Diamond." *Id.* at PageID# 865-70. To Simpson, Greenwood makes such statements as "let's go with Diamond for the trenching work," and "[w]e also need to get the curb by the front left of the building brought up to standard height." *Id.* at PageID# 865. In another exchange, Simpson states to Greenwood, "Please see quotes for curb repairs. Mr. Roof is the best price. Let me know if you want to move forward." *Id.* at PageID# 868. Greenwood later replies, "Thanks, let's go with Mr. Roof." *Id.* at PageID# 867. Notably, Greenwood signs this last email as "Thomas Greenwood, Springer Capital, LLC." *Id.*

*2. Exhibit D*

The second exhibit (Exhibit D) includes an email message from Greenwood to Jennifer Hippen of Brookside in November of 2019. Farnoly Dep. Ex. D, DN 60-4 at PageID# 874. In this message, Greenwood informs Ms. Hippen of the receipt of Plaintiffs' demand letter and briefly summarizes the events leading up to the letter. Farnoly Dep. Ex. D, DN 60-4 at PageID# 874-75. Greenwood recounts his recent visit to The Views and the Davis property, during which he spoke with Gar Davis, and also recaps the events that took place after his visit. *Id.* at PageID# 874. On multiple occasions in this email, Greenwood refers to The Views as "our property" and uses the term "we" in reference to Defendants taking or not taking certain actions.[14] *Id.* at PageID# 874-75. This email is signed as "Tom" over a signature block that reads, "Thomas Greenwood III, Principal, Springer Capital, LLC." *Id.* Plaintiffs also note that copied on this email was Russell Rhoads, an individual described by Farnoly as an "analyst." Pls.' Resp. Mem., DN 60 at PageID# 798; Farnoly Dep., DN 60-4 at PageID# 856 ("He's our . . . analyst . . . he basically helps out with all aspects of, you know, construction, under—really underwriting acquisitions, helping out with

---

[14] Examples of the "our" and "we" language used by Greenwood in the email to Hippen are:
1. "[W]e had a very neighborly conversation on 10/2/19 where Gar showed me all the issues stated in the report and we also spent some time at **our** property looking at what could be done to help divert water runoff. We verbally agreed to divert **our** gutter runoff towards Brownsboro Rd. and away from his building." Farnoly Depo. Ex. D, DN 60-4 at PageID# 874 (emphasis added).
2. "Gar and [Gar's attorney] asked me to inquire with my insurer whether **we** could put in a claim to help him fix his property which he estimated would cost $86,125. **We** inquired but had little luck with our insurance broker." *Id.* (emphasis added).
3. "I spoke with [Gar's attorney] . . . and explained to him that nothing **we** had done during **our** renovation to alter [sic] the gutters and storm water runoff at the property . . . ." *Id.* (emphasis added).
4. "**Our** property was built between 1968-1972 and Davis Electronics in the early to mid 1980s." *Id.*
5. "They offered to let **us** settle for the $86k sum along with the work we verbally agreed upon. They gave **us** until 11/15 to respond." *Id.* at 874-75 (emphasis added).
6. "**We** were hoping to remain 'neighborly' and call Gar Davis tomorrow to further explain that **we** have not altered or changed a thing on the property and are doing **our** best to help him eliminate some of his water issues by being a good neighbor." *Id.* at 875 (emphasis added).
7. "**We'd** like to understand what, if any, liability **we** may have." *Id.* at 875 (emphasis added).

asset management. Just pretty much everything that is involved in the . . . nature of operating properties.").[15]

C. *Plaintiffs' Argument*

Plaintiffs assert that Farnoly's deposition statements and Greenwood's emails are evidence of Springer's involvement in "selecting and directing the work to be performed at The Views." Pls.' Resp. Mem., DN 60 at PageID# 797. Moreover, Plaintiffs maintain that Springer's involvement in these efforts gave rise to a duty to Plaintiffs under *Grayson*. *Id.* at PageID# 797- 98. Plaintiffs contend that, based on *Grayson*, a court will find that a defendant owed the plaintiff a duty if "the harm to the plaintiff resulting from the defendant's negligence was foreseeable." *Id.* at 797. According to Plaintiffs, "[i]t was foreseeable that if Springer Capital negligently directed renovation or remediation efforts, . . . that unreasonably altered runoff from The Views that Springer Capital could be liable for the results of its negligent acts." *Id.* at 798. Thus, Plaintiffs contend, "Springer undertook affirmative acts which could foreseeably cause harm to Plaintiff[s]" and summary judgment should be denied. Pls.' Resp. Mem., DN 60 at PageID# 801.

V. *Springer's Reply*

In reply to Plaintiffs' response to the motion for summary judgment, Springer stresses the fact that Springer did not have a contractual relationship with Brookside and maintains that Plaintiffs failed to establish that Springer owed a duty to Plaintiffs. Springer Reply Mem., DN 64 at PageID# 979, 980.[16] Springer contends that Greenwood's use of his Springer email account is

---

[15] The Court takes notice of the fact that Rhoads does not appear to have any interest in or role with SC Echo Associates or SC Echo Managers, but he has been identified by Greenwood as an employee of Springer and is listed on Springer's website as an Associate at Springer Capital. Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 719- 20 (response to Interrog. No. 12); Greenwood Depo., DN 43-3 at PageID# 417-18; Springer Capital, https://www.springercap.com/team (last visited Sept. 9, 2021).

[16] Springer also criticizes two cases cited in Plaintiffs' response, *Lakeside Village Homeowners Ass'n v. Belanger*, 545 S.W.3d 15 (Tex. App. 2017) and *Mason v. City of Mt. Sterling*, 122 S.W.3d 500 (Ky. 2003), for being inapplicable to the case at bar. The Court agrees that these two cases do not further Plaintiffs' theory for Springer's liability and has chosen not to address either parties' discussion of these cases.

the result of streamlining the handling of his various business interests and that it does not suggest that Greenwood always speaks for Springer when he corresponds from this account. *Id.* at PageID# 981.

Instead, Springer asserts that in the email messages put forward as evidence by Plaintiffs, Greenwood was communicating as a representative of SC Echo Associates, not as a representative of Springer. *Id.* Springer likens Greenwood's practice of using his Springer email account for multiple businesses to an employee using a company car to conduct both personal and company business, stating that Greenwood "authorized himself" to use one email account for all business matters. *Id.* (citing *Weldon v. Federal Chemical Co.*, 378 S.W.2d 633 (Ky. 1964)). Furthermore, Springer contends that Farnoly's retraction of certain key statements made during his deposition undermines Plaintiffs' reliance on those statements. *Id.* at 982-83.

## VI. *Legal Standard*

Summary judgment is appropriate when the moving party shows that, for each claim or defense on which judgment is sought, there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party may show the absence of any genuine issue of material fact by "demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Ford v. GMC*, 305 F.3d 545, 551 (6th Cir. 2002). The moving party may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that negate an essential element of the nonmoving party's claim. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. 317 at 322.

If the moving party makes this showing, "the burden . . . shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. DOT*, 53 F.3d 146, 150 (6th Cir. 1995). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *See Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Rather, to overcome a motion for summary judgment, the nonmoving party must produce "significant probative evidence." *See Moore*, 8 F.3d 335, 339-40 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court should grant a motion for summary judgment "if the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party." *Cox*, 53 F.3d 146, 150 (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)).

*VII.    Analysis*

According to Plaintiffs, Springer can be held liable under *Grayson* because it was foreseeable that negligently "directing" the renovation work at The Views could cause injury to Plaintiffs. Thus, Plaintiffs' theory only holds if Plaintiffs can establish that Springer directed the renovation work. As discussed previously, both parties agree that there was a contract between SC Echo Associates and Brookside, designating Brookside as an "agent" of SC Echo Associates. Both parties also agree that there was no contractual relationship between Springer and Brookside at the time of the renovation work at The Views. Consequently, if Springer "directed" the renovation work at The Views, this would require Springer to step into the role of SC Echo Associates as the principal, with Brookside working as its agent.

Springer claims that Plaintiffs fail to allege that Springer could be held responsible under a theory of agency law. Springer Mot. Summ. J. Mem., DN 53-1 at PageID# 709, 710-11.

10

However, in the amended complaint, Plaintiffs plainly state that Brookside acted as an agent for "SC Defendants," meaning Springer and SC Echo Associates. First Am. Compl., DN 47 at PageID# 530. Further, in the response to the motion to dismiss, Plaintiffs suggest that the proximity of Springer and SC Echo Associates lead to Brookside taking orders directly from Springer regarding the construction work to be conducted at The Views. *See* Pls.' Resp. Mem., DN 60 at PageID# 798 ("[The] facts indicate a relationship existed between SC Echo Associates, LLC, the owner of The Views, and Springer Capital. That relationship was significant enough such that Springer Capital directed renovation work, selected contractors, and met with Plaintiff to discuss its demand for settlement."). Accordingly, Plaintiffs have alleged that Springer stepped into SC Echo Associates' role in directing Brookside regarding the construction work.

Common law provides that "a principal is vicariously liable for damages caused by torts . . . of an agent . . . acting on behalf of and pursuant to the authority of the principal." *Wolford v. Scott Nickels Bus Co., Ky.*, 257 S.W.2d 594, 595 (1953). *See also* Restatement (Third) of Agency, § 7.03 (2006). Hence, if Plaintiffs can establish that Springer acted as principal in directing Brookside, Springer can be held liable for any tortious conduct committed by Brookside under Springer's direction. The Court must, therefore, assess if Plaintiffs have raised any genuine issues of material fact regarding a principal-agent relationship between Springer and Brookside.

*Kentucky Agency Law*

Kentucky law defines agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Powell v. Tosh*, 929 F. Supp. 2d 691, 699 (W.D. Ky. 2013) (quoting *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003) (internal quotation marks omitted)). Questions of whether one party acted as the agent of another should be

evaluated "at the time the injury occurred." *Powell* at 699 (quoting *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756 (Ky. 1955) (internal quotation mark omitted)). The burden of proof lies with the party alleging that agency existed at the time of injury. *Id.* at 700 (citing *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992)).

If material facts are in dispute or if the evidence is "contradictory or conflicting" as to whether a principal-agent relationship existed at the time of injury, the question of agency should be left to the jury to decide. *Id.* (*quoting CSX Transp., Inc. v. First Nat'l Bank*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999) (internal quotation marks omitted)). Otherwise, the question of agency is a question of law that should be decided by the court. *Id.* In Kentucky, "the right to control is considered the most critical element in determining whether an agency relationship exists." *Phelps* at 50 (quoting *CSX Transp., Inc. v. First Nat'l Bank*, 14 S.W.3d 563, 566-67 (Ky. Ct. App. 1999) (quotation marks omitted)).

In *Powell v. Tosh*, the court found that a non-landowner defendant ("Tosh") could be held liable under Kentucky law for directing operations on the land that lead to the alleged torts, including trespass. 929 F. Supp. 2d 691, 702 (W.D. Ky. 2013). The court stated that, even though the operations were carried out by contracted farmers designated as "independent contractors," genuine issues of material fact existed as to whether the contracted farmers could be considered agents of Tosh. *Id.* at 700. The most convincing evidence cited by the court for its conclusion was that "Tosh . . . exercise[d] a great deal of control over crucial aspects of the . . . operation." *Id.* at 701.

In another Kentucky case, the Western District Court looked to the degree of control exercised by the Canadian National Railroad ("CN") over an excavation contractor ("BRV") to determine if the relationship between the two parties was that of a principal and agent, as claimed

12

by BRV. *MCI Commun. Servs. v. BRV Equip., Inc.* 2009 U.S. Dist. LEXIS 9592 at *10-*11 (W.D. Ky. 2009). The court stated that although the agreement between BRV and CN described BRV as an independent contractor, BRV provided evidence that suggested BRV was working under the control of CN. *Id.* at *8. For example, BRV offered evidence that a CN foreman may have given directions to a BRV trackhoe operator about how and where to move "muddy material" during a construction project. *Id.* at *8-*9. BRV contended that "[b]y directing the BRV operator in the performance of his work, . . . CN changed its relationship with BRV from that of independent contractor to agent." *Id.* at *9. The court ultimately denied summary judgment stating that, because the evidence was conflicting, "a genuine issue of material fact exists as to whether or not BRV was an agent of CN at the time the injury occurred." *Id.* at *10. The court left the question of agency for the jury to decide. Id. at *11.

*Application to Case at Bar*

In accordance with the cases above, Plaintiffs have raised reasonable issues of fact as to whether Springer can be held liable under principles of agency. Assuming, as Plaintiffs claim, the construction work discussed in the emails between Greenwood and Brookside is the work that caused the damage to the Davis property, it is plausible that Springer had control over operations that allegedly lead to negligent trespass. At minimum, Plaintiffs have provided sufficient evidence to bring the relationship between Springer and Brookside into question and establish a conflict of fact between the parties.

Greenwood gave direct instructions to an employee of Brookside about how to proceed in selecting a construction contractor in the emails offered as evidence by Plaintiffs. Further, the back and forth exchanges between Greenwood and Brookside give the appearance that Springer may have had control over the day-to-day operations of The Views. Greenwood's emails are from a

Springer email account and, in some of the messages, Greenwood's signature creates the impression that he is writing on behalf of Springer. Other evidence, such as the inclusion of Russell Rhoads on an email communication between Greenwood and Brookside and Greenwood's use of "our" and "we" language, also alludes to Springer's involvement with Brookside. Thus, there exists more than a "metaphysical doubt" that Springer, allegedly acting through Greenwood, might have exerted control over Brookside's management of construction work at The Views.

The allegation that Brookside carried out acts on behalf of Springer has not been directly rebutted by Springer. While Springer reiterates on multiple occasions that Springer has no ownership interest in SC Echo Associates or in The Views, that Springer and SC Echo Associates are two distinct entities, and that Springer had no contractual relationship with Brookside, Springer fails to provide an adequate explanation for the facts presented by Plaintiffs. Even if the Court discounts Farnoly's deposition statements, Springer did not refute the email evidence offered by Plaintiffs.[17]

The Court is not convinced by Springer's comparison of Greenwood's use of his Springer email account for handling multiple businesses to an employee using a company car for personal and business use. Unlike the case cited by Springer in support of this argument, Springer cannot point to a lack of evidence, "either direct or inferred," that Greenwood was conducting business for Springer when communicating with employees of Brookside. Rather, the content and language of the email messages, as well as Greenwood's inclusion of Springer indicia in his signature, bring into question whose interests Greenwood was representing in those communications.

---

[17] Springer raises the claim that Plaintiffs, in their response memorandum, allege that "Springer and SC Echo were in a joint enterprise." Springer Reply Mem., DN 64 at PageID# 981. The Court does not see any suggestion of such an allegation in Plaintiffs' response memorandum. Therefore, the Court has chosen not to address this claim put forth by Springer for the first time in the reply memorandum.

14

The Court finds that Plaintiffs have raised genuine issues of material fact as to whether Springer owed Plaintiffs a duty of care for the construction work that was performed at The Views and allegedly caused damage to the Davis property. Springer has failed to demonstrate that Plaintiffs lack the evidence to support a finding that Springer owed Plaintiffs this duty of care. Because there exist questions of fact that must be resolved by the jury, Springer's motion for summary judgment will be denied.

September 20, 2021

Charles R. Simpson III, Senior Judge
United States District Court

15